IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MICHELLE YVARRA LOPEZ, | § § § | |
| *Plaintiff,* | § § | SA-21-CV-00930-ESC |
| vs. | § § § | |
| KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY, | § § § § | |
| *Defendant.* | § | |

**ORDER**

This order concerns Plaintiff's request for review of the administrative denial of her application for a period of disability and disability insurance benefits ("DIB") under Title II and an application for social security income ("SSI") under Title XVI. 42 U.S.C. §§ 405(g), 1383(c)(3). On September 14, 2022, the parties appeared through counsel before the Court for oral argument on the issues raised in this case. After considering Plaintiff's Opening Brief [#16], Defendant's Brief in Support of the Commissioner's Decision [#17], the transcript ("Tr.") of the SSA proceedings [#9], the other pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, the parties' oral arguments at the Court's hearing, and the entire record in this matter, the Court concludes that no reversible legal error was committed during the proceedings, and substantial evidence supports the Commissioner's decision finding Plaintiff not disabled. The Court will therefore affirm the Commissioner's decision.

**I.  Jurisdiction**

This Court has jurisdiction to review a decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The undersigned has authority to enter this Order pursuant to 28

1

U.S.C. § 636(c)(1), as all parties have consented to the jurisdiction of a United States Magistrate Judge [#10, #11, #14].

## II.  Legal Standards

In reviewing the denial of benefits, the Court is limited to a determination of whether the Commissioner, through the ALJ's decision,[1] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence and credibility assessments are for the Commissioner, not the Court, to resolve. *Id.* While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims of procedural error, are reviewed *de novo*. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

In determining if a claimant is disabled, the Commissioner uses a sequential, five-step approach, which considers whether: (1) the claimant is currently engaged in substantial gainful activity, (2) he has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents him from doing any relevant work. *Garcia v. Berryhill*, 880 F.3d 700,

---

[1] In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

704 (5th Cir. 2018).  If the claimant gets past the first four stages, then the burden shifts to the Commissioner on the fifth step to prove the claimant's employability.  *Id.*  A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

### III.  Factual Background

Plaintiff Michelle Yvarra Lopez filed her applications for SSI and DIB in September 2019, alleging disability beginning June 15, 2019.  (Tr. 196, 206.)  At the time of her applications, Plaintiff was 50 years old, weighed 285 pounds, was 5'3", and had a body mass index of 40 or higher.  (Tr. 206, 235.)  Plaintiff holds a GED and has past work as a cashier/attendant for a parking garage, a ticket seller, and a security monitor for a travel agency and security service.  (Tr. 235.)  The related medical conditions upon which Plaintiff based her initial DIB and SSI applications were hypertension, heart problems, edema of the legs, and arthritis of the knees.  (Tr. 234.)  Plaintiff's applications were denied initially on February 21, 2020, and again upon reconsideration on July 21, 2020.  (Tr. 70–97.)

Following the denial of her claim, Plaintiff requested an administrative hearing.  Plaintiff and her attorney attended the administrative hearing before Administrative Law Judge ("ALJ") Janice Holmes on February 2, 2021.  (Tr. 29–49.)  Plaintiff and vocational expert ("VE") Jessica Earl provided testimony at the hearing.  (*Id.*)  Plaintiff testified that she stopped working due to her lymphedema, which causes her legs to swell and the sensation of pins and needles, and that flare-ups from the condition are sometimes accompanied by a high fever and require hospitalization. (Tr. 39–40.)

The ALJ issued an unfavorable decision on March 29, 2021. (Tr. 15–24.) The ALJ found that Plaintiff met the insured-status requirements of the SSA through June 30, 2021, and applied the five-step sequential analysis required by SSA regulations. At step one of the analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 15, 2019, the alleged disability onset date. (Tr. 17.) At step two, the ALJ found Plaintiff to have the severe impairments of obesity, lymphedema, and degenerative joint disease/osteoarthritis of the knees. (Tr. 17–18.) At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments in the applicable Social Security regulations so as to render Plaintiff presumptively disabled. (Tr. 18.)

Before reaching step four of the analysis, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in the regulations, except that she requires a sit/stand option that would allow her to shift her position each hour for one minute from sit to stand and back. (Tr. 18–22.) Additionally, Plaintiff can only occasionally climb ramps and stairs but cannot climb ladders, ropes, or scaffolds; is limited to occasional balancing, stooping, kneeling, crouching, and crawling; is to avoid concentrated exposure to extreme heat/cold, humidity, and vibration; and is to avoid exposure to hazards such as unprotected heights, moving mechanical parts, and operating motor vehicles. (*Id.*) At step four, the ALJ determined that Plaintiff is capable of performing her past relevant work as a surveillance system monitor as actually and generally performed and as a parking lot attendant as actually performed. (Tr. 22–23.) Accordingly, the ALJ determined that Plaintiff is not disabled for purposes of the Act, and therefore not entitled to receive DIB or SSI. (*Id.*)

Plaintiff requested review of the ALJ's decision, but her request for review was denied by the Appeals Council on August 19, 2021.  (Tr. 1–11.)  On September 30, 2021, Plaintiff filed the instant case, seeking review of the administrative determination.

## **IV.  Analysis**

Plaintiff raises one point of error in this appeal.[2]  Plaintiff argues that the medical record demonstrates the need for Plaintiff to use an assistive device for walking and the ALJ erred in omitting a walker-related limitation from Plaintiff's RFC.  Plaintiff further argues this error was not harmless because, while using a walker, she does not have the use of either of her hands and is therefore unable to perform her past relevant work.  Because the Court finds that Plaintiff failed to carry her burden to demonstrate the medical necessity of an assistive device for walking, the Court rejects Plaintiff's point of error and affirms the finding of the Commissioner that Plaintiff is not disabled.

An RFC determination is the most an individual can still do despite her limitations.  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, the ALJ must consider all the evidence in the record, including the limiting effects of all documented impairments, regardless of whether those impairments are severe or non-severe.  *Id.* at § 404.1545(a)(1)–(3).  The relative weight given to the evidence contained in the record is within the ALJ's discretion.  *Chambliss v. Massanari*, 269 F.3d 520, 523 & n.1 (5th Cir. 2001) (per curiam).  To that end, the ALJ is not required to incorporate limitations in the RFC that she did not find to be supported in the record.  *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam).  Furthermore, "RFC determinations are inherently intertwined with matters of credibility, and the ALJ's credibility

---

[2]  Plaintiff raised a second point of error in her brief—that the ALJ's credibility determination was defective because she failed to consider Plaintiff's 26-year work history.  However, Plaintiff abandoned this issue at oral argument.

determinations are generally entitled to great deference." *Acosta v. Astrue*, 865 F. Supp. 2d 767, 790 (W.D. Tex. 2012) (citing *Newton*, 209 F.3d at 459 (internal quotation omitted)).

Here, the ALJ assessed Plaintiff with the RFC to perform sedentary work. Per the governing regulations, sedentary work involves lifting no more than 10 pounds at a time with occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a). Although a sedentary job is defined as one involving sitting, occasional walking and standing are required to perform job duties. *Id.* Per the Social Security Administration, "occasional" means occurring from very little up to one-third of the time and for sedentary work should generally total no more than two hours of an eight-hour workday. Titles II & XVI: Determining Capability to Do Other Work—the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251, at *5 (S.S.A. 1983). In light of Plaintiff's lymphedema and osteoarthritis of the knees, the ALJ imposed additional restrictions that Plaintiff be provided a sit/stand option allowing her to shift her position each hour. (Tr. 18–22.)

In fashioning Plaintiff's RFC, the ALJ acknowledged Plaintiff's testimony regarding her use of a walker. (Tr. 21.) Plaintiff testified at the ALJ's hearing that she requires a walker at all times due to her lymphedema in her lower right extremity but admitted that the walker is self-prescribed. (Tr. 41–43.) The ALJ found Plaintiff's testimony inconsistent with her statement to Dr. William Green, the consultative examiner, that she used the walker because of her knee "giving way" and Dr. Green's observation that Plaintiff's gait (with the assistance of the walker) was normal with no unsteadiness. (Tr. 21.)

Plaintiff argues there is no inconsistency in the evidence, and the medical record demonstrates the need for the walker. The Court disagrees. Plaintiff bears the burden to establish that her impairments result in significant limitations to her potential RFC. *Greenspan*

*v. Shalala*, 38 F.3d 232, 239 (5th Cir. 1994).  The Social Security Administration has stated that "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device . . . and describing the circumstances for which it is needed . . . ."  *See* Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work—Implications of a Residual Functional Capacity for Less than a Full Range of Sedentary Work, SSR 96–9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996).  Plaintiff has failed to satisfy her burden to demonstrate a hand-held assistive device is medically required for her condition such that the ALJ was required to include a walker-limitation in her RFC.

This is not a case where the ALJ ignored Plaintiff's use of a walker or disregarded medical evidence prescribing the use of a walker without discussion.  There is no prescription from any medical provider for an assistive device of any kind or a walker specifically in the medical records, and again Plaintiff admitted in her testimony before the ALJ that her walker use is self-prescribed.  (Tr. 41–43.)  Nor are there any medical records from any treating provider regarding Plaintiff's physical impairments and the limitations caused by her lymphedema or osteoarthritis, outside of those physicians who treated Plaintiff at the emergency room in February and May 2020 and January 2021.  At the time of her hospital visits, Plaintiff did not have a primary care physician and did not pursue ongoing medical care, despite being instructed repeatedly to do so by the emergency room doctors.  (Tr. 353, 357, 366, 428, 431.)

Nor do the hospital records from Plaintiff's three emergency room visits support Plaintiff's assertion that she requires an assistive device for mobility.  Plaintiff was observed as "independent" regarding her ambulatory status in February 2020 upon intake at the emergency room, and assessed with a normal gait, full range of motion, and no motor deficits.  (Tr. 321–22.)

In May 2020, Plaintiff also ambulated with a normal gait and no motor or sensory deficits. (Tr. 357–58, 60.) There was no reference to a walker at either of these visits. In January 2021, Plaintiff appeared at the third hospital visit in a wheelchair and tested positive for COVID-19 upon arrival, but her condition improved dramatically with medication. (Tr. 427, 436.) Discharge notes from all three of Plaintiff's emergency room visits lack any reference to the need for an assistive device. (Tr. 325–28, 353, 366, 431.) There are no other medical records before the Court, aside from the opinions of Dr. Green, the consultative examiner, and Joshua Medeiros, a non-examining physician's assistant in orthopedics.

Dr. Green's examination occurred on February 11, 2020, the day after Plaintiff was discharged from the first emergency room visit in the record. Dr. Green noted that Plaintiff arrived using a self-prescribed rolling walker and was unable to get on the examination table due to obesity. (Tr. 340–42.) However, Dr. Green also noted that Plaintiff had a normal gait and used the walker with no unsteadiness. (*Id.*) Dr. Green did not express any opinion on Plaintiff's need for an assistive device. Plaintiff asks the Court to infer from Dr. Green's silence on her need for a walker that this device was medically required. The Court declines to do so.

Medeiros reviewed Plaintiff's medical records approximately one year later in January 2021 and provided a non-examining medical opinion that Plaintiff should use a rolling walker for ambulatory support due to her knee osteoarthritis, lower extremity lymphedema, and obesity, all of which place her at high risk of falling. (Tr. 432–433.) Medeiros also opined that Plaintiff should not be standing and walking for more than one hour and cannot sit for six hours in a workday. (*Id.*)

As previously noted, the ALJ specifically addressed Plaintiff's examination with Dr. Green, finding that Plaintiff's statement during the exam that she required the use of an assistive

device was not credible in light of her conflicting statements at the hearing as to the reason for the walker use. (Tr. 21.) In evaluating Plaintiff's credibility as to the extent of her limitations, the ALJ also compared the 2019 Function Report Plaintiff completed with her DIB and SSI applications (in which she stated that she was able to wash dishes, make her bed, fold clothes, vacuum the house, cook breakfast, go out to the movies, dinner, birthday parties, and church, and that she visited stores three times a week and the library twice a week) with her testimony at the ALJ's hearing that she leaves the house only three times per month due to pain. (Tr. 21, 42, 248–250.) In light of these inconsistencies, the ALJ found Plaintiff's testimony as to the extent of her limitations to be less than credible. (Tr. 21.)

The ALJ also directly addressed Medeiros's opinion, finding it less persuasive than the opinions of the State Agency medical consultants, who concluded at the initial and reconsideration levels that Plaintiff could stand and/or walk for four hours a day and sit for six hours a day and made no mention of an assistive device. (Tr. 55, 64.) This non-examining opinion is the *only* opinion in the record regarding Plaintiff's walker use.

The ALJ has the sole responsibility to determine a claimant's RFC and is tasked with interpreting the medical evidence to determine a claimant's capacity for work. *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012). An ALJ is not required to endorse a medical opinion of record in fashioning the RFC and is free to adopt in part or reject in full any opinion he finds not to be supported by or consistent with the medical evidence. *See Fontenot v. Colvin*, 661 Fed. App'x 274, 277 (5th Cir. 2016) ("[T]he ALJ is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly.") (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)). The fact that the ALJ found Madeiros's opinion unpersuasive does not constitute reversible error unless the ALJ applied the

incorrect legal standard in evaluating the evidence, or the record lacks substantial evidence to support the ALJ's ultimate resolution of that evidence. Plaintiff has not argued that the ALJ applied the incorrect legal standard, improperly weighed any of the opinions, or failed to evaluate Medeiros's opinion under the governing regulations. In light of the absence of any prescription or medical evidence referencing the need for an assistive device, the Court finds that there is substantial evidence to support the ALJ's treatment of the medical opinions of record and the ultimate RFC in this case.

In summary, because there is substantial evidence to support the ALJ's RFC determination, and the ALJ did not commit any reversible legal error in making this determination, the Commissioner's decision that Plaintiff is not disabled should be affirmed.

## V. Conclusion

Based on the foregoing, the Court finds that no reversible error was committed during these proceedings and substantial evidence supports the Commissioner's finding that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision finding that Plaintiff is not disabled is **AFFIRMED**.

SIGNED this 20th day of September, 2022.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE